May it please the court, my name is Julie Johnson. I'm here on behalf of the appellant Anthony Walker. Today I plan to focus on just two of the Fourth Amendment issues in this case. The government argues that the warrantless roadside search of Mr. Walker's vehicle was permitted under Arizona v. Gantt. However, that is not correct. As this court knows, Arizona v. Gantt marked a in which police had an automatic right to search the passenger compartment of the vehicle incident to a lawful arrest. And in its place, the court put two important limitations on the police officer's ability to search a vehicle incident to a lawful arrest. Number one, the first scenario in which police may still do a search is if the suspect is still in the car, the officer can search within the area the suspect can reach. That's clearly not an case because Mr. Walker had already been removed from the vehicle and was in handcuffs. So we're only focusing on the second scenario, which is when the officer has reason to believe that there will be evidence related to the offensive arrest located within that vehicle. And embedded within that are two important limitations. Number one, the evidence has to be related to the offensive arrest. And number two, the officer has to have reason to believe that that evidence will be in the car. Now the Supreme Court didn't flesh out exactly what that meant. And courts have taken slightly different views on this. But it's certainly clear that without those two limitations, we're going to go right back to Belton. That is why courts, we think that have taken a better approach, courts such as the Reagan court, the court in Grote, the court in Taylor, that DC Court of Appeals decision, have said the Supreme Court was clearly not intending to create a per se rule that looks at the offense type and says, well this is the type of offense that is likely to yield physical evidence, and this is not. As a general matter, I don't necessarily take exception to what you're saying about Gantt, but it boils down to me for the particulars of the case. And you know, given your formulation, which is that there has to be some particularized reason under Gantt to believe that there would be evidence of the offense for which someone was arrested in the car. The particularized reasoning here would seem to me fairly strong on the point that he consumed alcohol very recently, and he was driving, failing to stop the stop signs, and he was driving erratically, and then, at least as the evidence developed at the suppression hearing, he passed into the opposing lane. And then when Officers Hill and Masters stopped him, they smelled a strong, according to Hill's testimony, they smelled a strong odor of alcohol actually on his breath, as well as emanating from the vehicle's passenger compartment, and the eyes were bloodshot and glassy, at least according to the testimony. The gentleman was stumbling out of the car, and his gait was unstable. So all these don't just suggest somebody drinking considerably in the past, but drinking quite recently, quite that with the failure to provide a driver's license, despite the fact that he was razzed repeatedly for a while, and he's leaning on the center console, and according to the testimony, he's making gestures as if he's trying to conceal something or to hide something. The combination of all of those things would lead you to believe that we shouldn't upset the district judges finding that there was not just a general kind of thing. I think you've given a good general point, but the particular evidence of this case provided them reason to believe that there would be some alcohol and perhaps an open container or whatever in the car. The evidence of recent, very recent drinking, plus movements to try to conceal something in the center console, or at least, wouldn't that be particularized evidence that the officers could rely on in thinking, well, we probably would find an open container or something near the driver's seat where he could use it and get a drink as he was driving along? Well, Your Honor, and this is of course the crux of the problem, and a number of the factors that Your Honor said our position is are not in fact particularized to this scenario. As the Reagan court and the Taylor court noted, every time a person is arrested for driving under the influence of alcohol, certain factors will always be present. The person will usually have a blood alcohol of 0.08 or higher, they will have some impaired speech, some signs of physical intoxication, but if we're looking at evidence, as Your Honor noted, of recent intoxication or consumption of alcohol in the vehicle, what some courts, including Grote and Valandra, have looked for is visualization of a container of alcohol in the car. This court also relied on that in an unpublished decision in Washington. Slightly different scenario, the person was charged with an open container violation, but the court, in ruling on Gantt, specifically noted that the officer could see a partially consumed bottle of alcohol before. In every DUI case, you don't necessarily, you know, smell alcohol on the breath, see bloodshot eyes, smell alcohol coming out of the passenger's compartment, have somebody stumbling out of the car. The pattern of driving here wasn't just one incident that led to the stop, but it was running stop signs and taking a left turn and going in, or taking a right turn and going into the opposite lane, and so I think this, why wouldn't this go, why wouldn't this be a case of more immediate drinking, or at least an officer could suspect this was a case of more immediate drinking, rather than someone who had left the party 40 minutes ago, and when you combine that with the movements around the console, I'm just saying, with the case as particularized as that, and the evidence as the kind of case where we would credit what a district court found and observed. Your Honor, we submit that no. An officer would always have to have probable cause to effectuate the warrantless arrest, so there always are going to have to be some signs of intoxication, and typically an officer is not. It's a matter of degree, wouldn't you say? Yes, Your Honor, but certainly there's nothing, I submit in his exhibition of intoxication, that suggests that it was extreme. This was not a case like in Knight, where the person was passed out at the wheel of the car. If we both agree that it's a matter of degree, we both agree it's a matter of degree, doesn't that make the case more intensely factual? Take it out of an area of law, because we're not, you and I are not quarreling about a general proposition. We're quarreling about evidence and a matter of degree, and doesn't that take it less and less as a matter of law, and more and more as a fact-specific kind of inquiry for which district judges are uniquely suited? It is very factual, very fact-intensive, certainly, Your Honor, but we submit this is still a mixed question of fact and law with respect to the court's finding about reasonable belief that this court still can review DeNovo, and I want to just talk briefly about two of the particularized findings that the district court relied on and that the government relies on in its briefs. The odor of alcohol coming from the compartment of the car, as opposed to Mr. Walker, and the hand movements. And just briefly, with respect to the odor, the district court's finding was actually that the odor was emanating from Mr. Walker's person, and that can be found in page 155 of the Joint Appendix. Officer Hill did testify at the suppression hearing that the odor was coming from the compartment, but all of the contemporaneous documents only discussed an odor coming from his person, and perhaps that's why the district court ruled as it did. As for the hand movements, there's a few important things about the hand movements. Officer Hill described those not specifically as someone trying to hide evidence. This isn't a case where someone bent over and was clearly trying to put something under the seat of their car. He described them as trying to pull on the center of the car, reaching toward the center area. And it's significant that he noted those. Number one, he didn't note those in any of his initial reports. And when asked about that on cross-examination, he said it's because it did not form part of his probable cause to arrest. So at the time, that wouldn't the significance of the hand movements and how you're going to interpret those, what weight you're going to place on that, isn't that something for the It leads to the conclusion that there was reason to believe that evidence related to the offense of arrest, then I think that's a mixed question of law and fact. And it's clear that at the time of the arrest, or leading up to the arrest, Officer Hill was not making the association between those hand movements and the offense, which was clearly driving under the influence of alcohol. Wouldn't the center console be the most likely place to hide an open container? Well, Your Honor, that may be, and there are some cases. This is not a search of a trunk or whatever, doesn't it, doesn't it, doesn't it, isn't it important that the search we're contesting here, or the place where the evidence was found, was the center console, which is where an open container would be within reach of the driver? Your Honor, that is certainly a possibility, but Arizona v. Gantt makes it clear that we're not supposed to be dealing with possibilities. We're supposed to be dealing in specific, particularized facts that would lead a reasonable officer to believe that evidence related to the offense of arrest is going to be located there. I'm sorry, please, I did have a question, but please don't let me, please finish your sentence. Thank you, Your Honor, and the hand movements that are here, you know, I think they are just as easily interpreted as the fumbling of a person who is slightly impaired trying to respond to an officer's request for a license. Because it's clear that those movements occurred during that exchange. And this court has reminded law enforcement in Massenburg and in Foster not to interpret every hand movement as necessarily nefarious. I'm sorry, Your Honor. If we completely agree with you on the Gantt factors, do you foresee a problem with the possibility of inevitable discovery because the car would have been subject to an inventory search? No, Your Honor. It's unclear whether the government is arguing that an inventory search actually occurred or whether it's inevitable discovery, but I'll focus for now just on the inevitable discovery in Your Honor's question. We believe there are a number of reasons why that shouldn't apply here. Number one, it's clear from the evidence that an inventory search did not in fact occur, which we find in some of the other cases in which inevitable discovery has been an issue. It's also clear that an inventory search would never have been done. Officer Hill testified at one point that he was going to do an inventory search and then a few moments later said, well, that was an inventory search. And regardless of what the stated policy says, it's abundantly clear that Officer Hill's practice is not to perform an actual inventory search because this was purely an investigatory search. And if a police department can say, I'm going to perform a completely warrantless search and then point to a policy that clearly was not complied with and say that's an excuse, that's going to completely swallow the rule and we're going to return to a general. I do understand, but the car was blocking traffic and there was no indication that it would have been possible to get someone to pick it up. And I certainly take what you're saying about the officer's practice, although I suppose one could also say that he needn't conduct an inventory search at that point because he'd found incriminating evidence. But you think that the fact that it was not this particular officer's practice to conduct an inventory search addresses the concern I articulated? Well, I don't think that we can be confident from this record that it was the practice of the Baltimore City Police Department. And it's clear that the police officers, as he testified, had been trained that when you arrest someone, you can search a vehicle. And he said, well, the law has changed, but he didn't explain how. And it's very clear that, again, once he found incriminating evidence, he stopped. And the whole purpose of an inventory search is that it is not meant to uncover incriminating evidence. It's meant just to document the items of value that are in there, protect police against claims of a false property. He didn't comply with that at any point. Do you have a case to support your position that it requires that after the discovery of contraband, in order to avail themselves of inevitable discovery, they have to complete it after that and do an inventory search after it gets impounded? Do you have a case that supports that position? Not that specific point, Your Honor, but a number of cases, including Florida v. Wells and this Court's decisions in Matthews and in Brown, make it clear that in order to be an inventory search, it has to be undertaken according to standardized policies or practice. It has to be done in accordance with that, and it has to be done in good faith. And here, we don't have either one of those factors present. It's clear. We have the written policy at page 35. One of those cases where they actually did the inventory search and, therefore, had to meet the metrics and the requirements of doing so, but here it's preempted because they found contraband. That case would be the opposite. I'm talking about a case that says, no, because you found contraband and then you aborted what otherwise would have been the normal inventory because it was not necessary. The case says, well, no, if you don't actually complete that in this normal course of the policy, then you can't avail yourself of inevitable discovery. That's the case you're saying that the case says that? No, Your Honor. That's the case would have to be the facts to be relevant here, wouldn't it? I'm not aware of that exact fact. I didn't think so either, but go ahead. But, Your Honor, there are cases in which there was an initial unlawful search, and then there was a proper inventory policy that was done pursuant to the policy. And if that were the scenario here, then I would have a much more difficult argument. But that was, in fact, not done. And, again, if police are allowed to conduct warrantless searches and then point to a policy, even though there was no effort to actually comply with the policy, then we are going to go straight back to a general rummaging search, which is what Arizona. . . But you missed one step. They have to point to a circumstance that would allow under their policies an inventory search, as they do here because his vehicle was impeding the highway. Therefore, under that policy, they can impound it. That's the step they would need. You're right. You can't say, oh, every unlawful search, inventory. No, it would have to be something other than the unlawful stop or arrest that allowed the inventory search. So we have to get the facts and analysis correct if we want to address what Judge Duncan's question was to you. And, Your Honor, I see my time is up. If I just may respond to your question? If the lead judge will permit, yes. Sure, absolutely. Thank you, Your Honor. I think the Taylor, the Eighth Circuit decision that I submitted in the 28J, does speak to that question, that it's important to distinguish between the lawful impoundment and then the lawful search. I don't think there's any question that the towing was proper to tow the vehicle, but that doesn't necessarily mean that any search of that vehicle was lawful. Thank you. Thank you. Do you have some time for rebuttal as well? Thank you, Your Honor. Mr. Hammer? Good morning, Your Honors. May it please the Court, my name is Michael Hanlon. I'm an assistant U.S. attorney in Baltimore, Maryland. The United States does ask that the Court affirm the conviction in this case. I'll address the Fourth Amendment issues discussed by Ms. Johnson today, and I'll begin with the Gantt issue. In the government's brief, the government argued, and I continue to argue, that the search of this car was justified under either the Carroll Probable Cause Doctrine or the Gantt Doctrine. The government did not get into the details of the comparative burdens of proof necessary under Gantt or under the Probable Cause Doctrine, nor did I attempt to get into the question of whether or not Gantt forms a per se offense-based rule. I don't know if it does. I do believe, Your Honor, and the evidence clearly indicates that assuming a particularized suspicion as to the vehicle was required in this case under Gantt, we had such a particularized suspicion. The testimony in this case begins with the offense. The offense is relevant, even under the particularization standard, very relevant under Gantt. And I would submit that the nature of the offense can potentially put us about 90% of the way there, even under a particularization theory. This was drunk driving, an offense which, with the exception of the Reagan and Taylor cases, almost always seems to support a Gantt search. But on top of the drunk driving, on top of the nature of the driving, on top of the evidence of the recency of the defendant's drinking, we do have very specific particularized circumstances here that justified an officer's belief, and Officer Hill did have that belief, that there would be evidence of the offense in this vehicle, and specifically the officer's testimony that he could smell alcohol not only from the person of the defendant but from the vehicle, testified to that twice, once during his direct examination and once during his cross-examination. I do want to note, I'm not sure, I don't believe Officer Masters gave such testimony. She smelled alcohol in the breath of the defendant, but she wasn't in a position to detect any alcohol from the vehicle. One thing that interested me about this is it comes down, it seems to me, to the relationship between a district court and a court of appeals. And the question I have is, isn't the person or the judge who heard the actual testimony of the officers in whatever relevant testimony was brought to bear on the search in the traffic stop, isn't that person in a better position to assess a question of particularized suspicion than we are? That's not to say it's unreviewable or anything, but if you look at what the functions of district courts and court of appeals are on a case of particularized suspicion and what facts actually occurred and what weight to put on the facts, somebody who hears the testimony is just in a much better position to draw conclusions than an appellate court. We can debate whether it's all clearly erroneous, or we can debate whether it's a mixed question of fact and law. The government always wants clearly erroneous, and the appellant always wants it to be a mixed question. But the fact remains that if you actually hear the people who were on the scene and you get to hear what they say, you're just in a better position to make the call, whether you finally suppress or don't. Yes, Your Honor, the government agrees with all of that. I guess you do, because you won. Yes, Your Honor. If you lost, you would be here saying that the district court was wrong. That's obvious. But the question is, bloodshot eyes, you say that's consistent with recent drinking? I'm not sure I said bloodshot eyes, Your Honor. The odor of alcohol, the manner of the defendant's drinking. Well, I was about to say bloodshot eyes would indicate that it's in your blood. It takes a while for it to come to the point where it gets into small capillaries into your eyes and cause that kind of thing. That would be consistent in your system. But the driving, most people who are impaired drive erratically. So you said you were 90 percent. I think I'm quoting you correctly. We're 90 percent there almost just by the offense itself. You mean just because he made a wide turn near the police officer? That was it? Not just the wide turn, Your Honor. The fact that he was driving drunk, I would argue. A lot of people drive drunk. You got any statistics that most of them have an open container with them? Most of them come from the tavern. They come from the tavern. They normally don't bring their drinks with them. But they're drunk driving. I don't see how that's a non-starter there. You're drunk driving, that means your bottle is there, your drink is next to you. I think that would be a small percentage probably. So the other police officer didn't smell anything at all other than the breath. Officer Masters, I believe, testified that she did smell alcohol from the defendant's breath. Go ahead. She was not in a position from the testimony. She never attempted and did not discern any odor from the vehicle. She was on the other side of the vehicle. I do believe she testified that at one point she had an encounter with Mr. Walker and smelled alcohol in his breath. Now, smelling alcohol in your breath, that's consistent with recent drinking necessarily? I'm not an expert, Your Honor, but I would suggest that it certainly suggests recent drinking. At least drinking that is recent enough in the past so that it's still in one's breath, yes. But I can't say how recent. I can't say how recent. You can't at all. No, because that's why you have breathalyzers. And you might register having had two drinks two hours ago. You'll register on the breath. It has nothing to do that you just took a swig while you were turning the corner. Why? That's not a matter of credibility. The facts just don't add up to we're trying to get to Gantt here in some way torturously. These are state, run-of-the-mill state court crimes. It's amazing how federalism never is important unless it's a criminal setting. Then it's not important then. In other words, this is a state drunk driving case. Now it becomes a federal case because of the gun. And this is all about trying to justify getting into the gun, to the compartment. But basically it was just drunk driving, wasn't it? Gantt would be useless protection in a drunk driving case if this is the law because all of them do something erratic. They all have alcohol on their breath. In this case, this man was fumbling for anything he could. License, everything. But that's what people do when they're inebriated under your own evidence. So now he must have a gun or some contraband he's looking for. And why do you need an open container once you have someone that drunk? Doesn't matter what a container. An open container is a throwaway charge almost, isn't it, compared to DUI. I'm not an expert on the state law concerning open containers in vehicles, Your Honor. And I don't remotely suggest that drunk driving necessarily suggests that a person's got a gun in a car, nor is the government advocating a per se Gantt rule. Your Honor's correct. I'm not prepared to say today, I don't know whether the law's going to go in this direction, that every drunk driving arrest permits a Gantt search. I do think it gets you, maybe 90% is too much, but I do think it gets you a lot of the way there. But what's critical here is that on the facts of this case, and Your Honor's correct, the government is relying on the facts of this case because it does support the government's case, we had particularized evidence here. Officer, this wasn't just the drunk driving arrest, although that was very relevant. In fact, the defendant was drunk and had been drinking. But he also had reaching to the center console, this kind of movement toward the center console, which both Officer Hill testified was consistent with potentially trying to hide or get something. And Judge Bredar, I believe, at Joint Appendix page 157, if my citation is correct, also indicated that these movements were consistent with some manner of attempting to hide or do something in the center console. And we had the odor of alcohol coming from the vehicle as well as from the defendant. I have a question. Was the police officer standing there with him when he made this move toward the console? The officer at that point, Your Honor, was outside the vehicle, and Mr. Walker was still inside the vehicle. This was before Mr. Walker had actually been taken out of the car. I know it was before he was taken out, but it was after the police officer had approached him. Correct? Yes, Your Honor. Well, if the police officer is standing right there and you don't have anything in your hand, if you move toward the console, how could you be hiding something? I mean, you're standing right there, police officer, and you move toward it. What are you hiding? Nothing in your hand. Are you trying to say he's trying to get something or is he trying to hide something? Because hiding doesn't make sense. Getting, perhaps, but not hiding. My hands are empty. The police officer is standing right there. I'm hiding this. Hiding what? It doesn't make sense. I mean, somehow common sense has to prevail somewhere in these cases. It's just inconsistent. And I don't have to refer to a district court judge because they bought that. Well, I would hope the district court would be given some deference, Your Honor, but on that issue, I think that Officer Hill's testimony was that he wasn't sure what the defendant was doing exactly. It seemed like he might be trying to hide something. He could have been stuffing something down, could have been putting something into the center console, putting the center console down. The officer never testified he actually saw anything in the defendant's hands. And the whole purpose of the defendant hiding something would have been to try to secrete it so that the officer wouldn't actually see it. We're just trying to replay the whole suppression hearing about where the hands were and whether it was a concealing motion or what it is. I mean, it's almost as if we're reviewing a de novo, and I just don't think we're permitted to do that. I mean, you know, we do have district judges for a reason. Correct, Your Honor. We don't normally replay hand gestures in an appellate argument. Not generally my experience, Your Honor. Counsel, how do we ever get to Gannett if an appellate court hadn't looked at those things and said that the law changed? The law would never change. That's how we get to constitutional principles and the case law because some appellate courts did take the time to look at what otherwise was just passed along and found it violated the Constitution and the very precious Fourth Amendment. So this alchemy is necessary. It is. The discussion is necessary, Your Honor, and the discussion of the application of the facts of the law is quite necessary. That's how Gantt and similar cases get decided. Except no one disagrees with the Arub here generally. That's not an issue. We're not arguing before the Supreme Court as to whether you need evidence of a specific offense before you undertake the search. Everybody agrees that you need particularized suspicion before undertaking the search, and it depends and it comes down on the facts. The argument in Gantt in response to my fine colleague's suggestion about how does the law ever advance, if we're arguing in a general legal proposition, then that point is a telling one. But here there's agreement on the general legal proposition that Gantt applies and that you need something particularized to continue on. That has been the government's theory, Your Honor, yes. I actually have a question. Certainly. As I understand it, both officers testified to smelling alcohol on his breath, and I believe Walker admitted to having had a couple of drinks. Am I recalling that correctly? A beer and a vodka drink, I believe, was the admission, Your Honor. Did the officers have probable cause at that point, given what they had seen, to arrest him for DUI? Yes, they did, Your Honor. And so why was it necessary for them to search? The district court found that the officer could reasonably search for the intoxicating substance for which he had probable cause to arrest. If he had probable cause to arrest for DUI, why would he need to search for the intoxicating substance? In other words, why would he need more evidence, Your Honor?  Officers always want cars and residences searched, Your Honor. If we can find more evidence in a place... Okay, it's better than not, I guess. Of course, yes. And it may have given rise to new charges. There's any number of reasons. Officer Hill clearly wanted to search the car, Your Honor. He had suspicions about contraband in the vehicle, and from a DUI perspective, he probably thought it would make his DUI case better if there was an intoxicating liquor or drugs in the car. I think his testimony was clear on that point, and the government would concede that. It was a contraband search, Your Honor, which is why, on the question of the inventory search issue, the government's theory has always been one of inevitable discovery. In other words, if this had just been a routine traffic offense, if, for whatever reason, Mr. Walker had been arrested for driving on a suspended license and the car was stuck outside there in the street and there was no evidence... Are you saying that the driving pattern was consistent with substance abuse? Yes, Your Honor. Substance abuse? Did you say that? Your Honor, I'm meaning substance in the broadest sense, whether it be DUI or... No, did you say that, Judge Wilkinson said, you said that his driving pattern was consistent with substance abuse. Did you say that? I believe I agreed with that, yes, Your Honor. No, did you say that? Did I say that in my brief? Did you say that this morning? I believe I did just a moment ago. You mean making a wide turn is consistent with substance abuse? It can be under certain circumstances. I don't mean to suggest, Your Honor, that it's proof positive of substance abuse. It's not proof of anything. He made a wide turn. He could have been looking down and trying to find his cell phone. Now we're going to make him a DSM-III now and drug abuse. How far does this go? Well, in all fairness, the officers did believe him to be speeding, as I recall, and saw him fail to stop at two stop signs. There was that, Your Honor? There was other evidence... Well, that makes it substance abuse now. No, it's stop signs. There was evidence of erratic driving. There was evidence of erratic driving. Beyond the wide turn. Erratic driving, Your Honor, and the car at one point actually come into the half lane. Nobody is disputing that you didn't have probable cause to stop the car for drunk driving. That's not in dispute. No one, I don't think anyone, that's not even counsel, she stood up here very eloquently and talked. She never said you didn't have a reason to stop the car. Certainly you did. But now to make that substance abuse a reason for contraband, that's what I'm talking about. And your statement gave the very reason why we need the Fourth Amendment, because you answered very candidly, and that's the problem. You said, with Judge Duncan's question, you said, well, yeah, you know, every officer wants more. They want to try to get more if they can. That's why the Fourth Amendment is there to test your ability to get the more. That's where Gantt comes from. Now, in that sense, you agree with that? Absolutely, Your Honor. Right, and so I'm just saying, how do we, on this evidence, I just don't see how you, if this is the rule, almost every DUI, everyone starts with erratic driving, because you have to have an articulable reason for the stop, which is always an offense, a visible offense. You almost always have this on your breath, because it's in your system. You have some action by someone to do something. They could turn one way. Police officer said, well, they turned funny. I didn't like the way he turned. Must have been liquor he was looking for. Then you're in the car, easily. It has to be some limiting aspect, and it's not just because they're facts that can be articulated. I mean, I know you are for the government, but the government has a responsibility, too, to protect the Fourth Amendment, too. Absolutely, Your Honor, I do agree with that. And I think that the argument seems to suggest that if the door's flung open for everything, now it was a DUI. I just don't see any distinguishing factors, because it's two stop lights plus a turn. I just don't see that limiting aspect, and that's the troubling aspect of it, not the stop. Can you answer my question, please, and respond to what I just said? The question of the limiting aspect, Your Honor? I think we find that limiting aspect, Your Honor, by looking at the totality of the circumstances, not just the driving, not just the odor of alcohol in the breath, but the totality of the circumstances, the degree of the defendant's intoxication, the specific nature of the offense to begin under Gant, combined with the particularized circumstances we had here, alcohol being smelled, according to the officer's testimony, from the vehicle as well as the defendant, and the furtive movements towards the center. And I do take Your Honor's comments about the question about whether or not every movement in a car automatically gives suspicion, but furtive, evasive movements, reaching towards the center console, which the district court did credit in this case, can be evidence of attempting to hide or secrete something, and the testimony was very specific here. And it was also conjoined with Mr. Walker's overall noncompliance with police instructions. This is him reaching over, even after being told to get out of the car, almost as if in reaction to being told to get out of the car. And Officer Masters observed, not in as much detail, but she also observed the movements towards the center of the vehicle. This is specific, and it is articulable, and it is particularized, and there, I think, is the limitation that prevents this from being the kind of case that emerges through the kind of per se rule, which the government's not advocating today, which I can understand the court is concerned about. I'm not advocating a per se rule today. I think on the facts of this case, the officers had good reason to believe, we've got to look in that car, there's something in that car we need to know about. The defendant's already been arrested for an offense that involves use of a substance. May I ask you also about the inventory search? Yes, Your Honor. What evidence was there that the standard practice of the police department was to conduct an inventory search in these circumstances prior to towing the car? Your position is that it's standard practice to conduct an inventory search here prior to towing? That is correct, Your Honor. And what evidence was introduced on that point before the trial brought? We put in evidence, Your Honor, the Baltimore Police Department's towing policy, which was in effect at the time of this incident, which laid out the circumstances. It's a bit of a worry policy, it's a bit complicated, but it boils down to the idea that if a person's arrested and if the vehicle's blocking traffic and it has to be towed, you're supposed to do an inventory search for any valuables in the vehicle. We put into the record the written policy, and it's in the joint appendix. And we had Officer Hill's testimony about... How would you conduct the inventory search at roadside as opposed to towing the car and getting it out of the way? I think it depends on the circumstances, Your Honor. I think it depends on the timing, and I think it depends on the officer. I wasn't able to find anything in the towing policy that specifically requires this. I see my time has elapsed. I was just wondering why the inventory search wouldn't have... Why you wouldn't want to get the car out of the way and tow and then conduct the inventory search. But does that make a difference if you're going to conduct the inventory search in any event? I may answer, Your Honor. Yeah, sure. I don't think the policy says one way or the other. I don't know if it makes a difference legally whether or not the search is done before or after to make it a proper inventory search. As a practical matter, and I have to confess, I'm sort of guessing here, I think whether or not an officer does it before or after may depend on how long the tow truck's taking, whether or not they have anything else to do, whether they have the time, et cetera. To be very clear, Your Honor, this was a contraband search. So I don't want to suggest that this was a sort of mechanical inventory search the way inventory searches are supposed to be done. I believe the police would have done an inventory search had this not been a situation where the gun had already been recovered or a search already done. I don't know whether the officers would have done that search at the scene or followed the tow truck back to the impound lot and done it there. I don't know the answer to that. Did the district court... This is my faulty recollection. Did the district court make a finding on the inventory search? I believe that the district court's finding was that an inventory search would have been done in a situation where the contraband hadn't been recovered. So the district court linked its finding to inevitable discovery. It found that the Baltimore City Police Department's towing policy was a reasonable, appropriate one, and that... I thought there was a finding on it. There was, Your Honor. All right, thank you. Thank you, Your Honors. Ms. Johnson, you have some rebuttal time. Yes, thank you, Your Honor. I wanted to respond briefly to two points. The first is, Your Honor, your question about the role of the district court versus the court of appeals. And I think there's an important distinction between factual findings, such as aspects of Mr. Walker's appearance, whether he's staggered, whether he had bloodshot eyes. Those are clearly factual determinations that a district court is in a superior position to assess. But when we are getting into legal conclusions, such as whether the officer had reason to believe that evidence would be in that car related to the offensive arrest... See, that's an interesting point, but I'm not sure I agree with it for this reason. You're talking about hand movements around a console. Okay, there are, you know, there's several interpretations that could be put on it, and one is that it's just nervousness of a perfectly innocent sort, or further evidence of intoxication. Another interpretation could be put on it, and that is that it's furtive, and the console is the last place you want the police to check, and that's where you want to make sure that the console is secure and locked down. And so I can't tell what interpretation to put upon a hand gesture, and that seems to me to be intensely factual as to, you know, what significance to attach to the hand gestures. You have to talk about what the officer's seen and what the nature of the hand gestures were. I mean, that seems to me factual. Wouldn't you agree? Well, Your Honor, again, even though these assessments are motivated by facts, the court still has to review the overall conclusion, just as it did in Foster and Massenburg, and said that there had been an erroneous conclusion about the hand movements in both of those cases. Ms. Townsend, what about credibility? What about the district court's credibility determinations? Those are certainly entitled to deference, Your Honor. In fact, we don't generally review credibility determinations. No, Your Honor, but I don't think this falls into the category of credibility. We have the district court's ruling, number one, that that reason to believe was equivalent to a probable cause assessment, and the district court ruled that the officer had probable cause to believe that Mr. Walker was impaired by something, and that was an erroneous conclusion, that second one. It was the only reason to believe that he was intoxicated by alcohol, and yet it's clear that Officer Hill went in looking for drugs. And so that was an erroneous legal conclusion this court should absolutely review. With respect to the parsing out, I would just refer the court to that Taylor, the D.C. Court of Appeals decision, which made a very thoughtful distinction between the types of traits you would always see. Sorry, I think my time is up. Do you have any concluding remarks, Your Honor? Thank you, Your Honor. I just want to remind the court that the scope of this problem is enormous. In 2012, there were more than 116,000 DUI arrests within the Fourth Circuit, and the scope of the search that officers are allowed to conduct is extremely intrusive, including closed containers, so this is a very important issue. Thank you, Your Honor. We thank you very much. Thank you both. We'll come down and greet counsel and then proceed into our next case.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Allyson K. Duncan